|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |
| 3 | | |
| 4 | KATHY R. GRAY MATHENY, | 3:17-cv-0016-MMD-VPC |
| 5 | Plaintiff, | |
| 6 | v. | |
| 7 | NANCY A. BERRYHILL, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| 8 | Acting Commissioner of Social Security, | |
| 9 | Defendant. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal and/or remand (ECF No. 22), defendant's cross-motion to affirm (ECF Nos. 23), and plaintiff's reply (ECF No. 24). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On April 3, 2012, Kathy R. Gray Matheny ("plaintiff") plaintiff filed for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. (Administrative Record ("AR") 216–19.) Plaintiff alleged a disability onset date of April 2, 2012. (*Id.*) The Social Security Administration denied plaintiff's application in the first instance on July 17, 2012, (*Id.* at 119-25), and upon reconsideration on March 14, 2013. (*Id.* at 126–38.)

On March 3, 2015, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison. (*Id.* at 48–75.) Jacklyn Benson-Dehaan, a vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on May 8, 2015, finding that plaintiff had not been disabled at any time between the alleged onset date and the date of the decision. (*Id.* at 30-47.) Plaintiff appealed, and the Appeals Council denied review on May 23, 2016. (*Id.* at 20–25.) Accordingly, the ALJ's decision became the final decision of the

Commissioner ("defendant"). Having exhausted all administrative remedies, plaintiff received a thirty-day extension to file her civil action on November 23, 2016, (AR 1–19), and thereafter filed her complaint for judicial review on December 23, 2016. (ECF No. 1.)

## II. STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSDI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . .." 42 U.S.C. § 423(d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is not onerous. It is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation omitted).

Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence. "The ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

### A. SSDI claims are evaluated under a five-step sequential process.

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* § 404.1520(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id.* § 404.1520(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* § 404.1520(c). The Commissioner will deny the claim if the claimant lacks a severe impairment or combination of impairments. *Id.*

At step three, the claimant's impairment is compared to those listed in the Social Security Regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). The list in Appendix 1 "define[s] impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted) (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). However, for an impairment to match a listing, "it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530 (emphasis in original).

If the Commissioner does not find disability at step three, review of the claim proceeds to step four. There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id*. § 404.1520(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

In making the step four determination, the ALJ considers the claimant's RFC and the physical and mental demands of the work previously performed. 20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). To determine the claimant's RFC, the ALJ must assess all the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. § 404.1545(a)(3). The ALJ is not, however, required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-prong inquiry where the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted). Second, if the first prong is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586,

591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may consider a variety of factors in weighing a claimant's credibility, including inconsistencies in a claimant's testimony, his or her reputation for truthfulness, an inadequately explained failure to seek treatment, or a lack of support from the medical evidence. 20 C.F.R. § 404.1529(c); *Orn*, 495 F.3d at 636. The focus, however, is ultimately upon the reviewing court. The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'" *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other jobs that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, the claimant is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id.* § 404.1520(g).

**B.    The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful activity since April 3, 2012, the application date. (AR 36.)

At step two, the ALJ found that plaintiff's history of congestive heart failure, cardiomyopathy, hypertension, and obesity were severe impairments that significantly limited her ability to perform basic-work related functions. (*Id.*) The ALJ also considered evidence regarding a variety of other diagnoses, but concluded that the evidence did not show those conditions to be severe or to cause any secondary issues warranting additional functional limitations. (*Id.*) Though plaintiff produced evidence that she had been diagnosed with chronic obstructive pulmonary disease ("COPD") and back pain, the ALJ found that these medically determinable impairments did not limit her ability to work and were thus nonsevere. (*Id.*) Regarding plaintiff's COPD, the ALJ relied on medical records indicating that plaintiff's respiratory examinations "have been largely normal." (*Id.*) The ALJ also noted that plaintiff was not required to use her supplemental oxygen during the day, and that there was no evidence plaintiff required frequent in-person hospitalizations due to her COPD. (*Id.*) As to plaintiff's back pain, the ALJ found that it had been treated conservatively with medication, did not require specialized treatment, and that the majority of her treatment records note only vague complaints of pain without any other objective findings. (*Id.*) Finally, the ALJ found that plaintiff's medically determinable mental impairments were nonsevere because they "do not cause more than minimal limitation in the [plaintiff's] ability to perform basic mental work activities …." (AR 37.)

At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (*Id.* at 23–25.)

The ALJ proceeded to step four and made several findings. To begin, the ALJ concluded that plaintiff had the RFC to perform light work, but with some limitations. (*Id.* at 18.) For example, the ALJ found that plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl. (*Id.* at 39.) However, plaintiff should avoid temperature extremes, and avoid all exposure to hazards at unprotected heights or dangerous machinery. (*Id.*) Next, the ALJ found that plaintiff's impairments could be expected to cause the symptoms alleged, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely

6

credible. (*Id*. at 40–41.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against plaintiff's credibility. (*Id*.) Finally, based on the evidence in the record and the testimony of the VE, the ALJ concluded that plaintiff was capable of performing her past relevant work as a waitress. (*Id.* at 41–42.)

A claimant is deemed not disabled at step four if capable of performing past relevant work. 20 C.F.R. § 416.960(b)(3). Thus, having found that plaintiff could perform her past work, the ALJ held that she was not disabled and denied her claim for benefits. (AR 42–43.)

**C.     The ALJ permissibly discounted plaintiff's subjective testimony.**

Plaintiff challenges just one aspect of the ALJ's decision: her adverse credibility finding. (ECF No. 16 at 5–10.) Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting plaintiff's testimony, and, therefore, that her disability determination lacks the support of substantial evidence. (*Id*.)

In her decision, the ALJ found plaintiff's allegations of disabling symptoms and limitations less than fully credible for three reasons: (1) the extent of plaintiff's reported daily activities belies her alleged limitations; (2) there is evidence that the plaintiff misrepresented facts relevant to the issue of her disability; and (3) objective evidence in the record did not support plaintiff's testimony as to the severity of her symptoms. (*See* AR 39–41). Each is discussed in turn.

**1.     Plaintiff's Daily Activities Are Consistent with Her Pain-Related Testimony**

First, the ALJ concluded that plaintiff "describes daily activities that are not limited to the extent that one would expect" given the symptoms she claims to have. (AR 40.) The ALJ relies on plaintiff's hearing testimony, where plaintiff testified that she can do the dishes, drive, and care for her personal hygiene. (*Id*.; *see* AR 60–62.) The ALJ also cited to plaintiff's function report, where she states that she can shop for groceries and handle her finances. (AR 40; *see* AR 255–56.) The ALJ found plaintiff's activities require physical, mental, and social capabilities that "replicate those necessary for obtaining and maintaining employment." (AR 40.)

Plaintiff contends that the ALJ failed to consider plaintiff's additional testimony that although she drives and cares for her personal hygiene, she does so on a diminished basis and

7

occasionally requires assistance from her husband. (ECF No. 22 at 7.) Plaintiff further contends that the ALJ failed to explain how the identified activities replicate the functions necessary for a full-time job. (*Id.*) Finally, plaintiff asserts that the ALJ disregarded the findings of "every physician of record," which confirms plaintiff's alleged pain, dysfunction, and limitations. (*Id.*) Defendant counters with a citation to the record, wherein a physician stated that plaintiff can have "an active lifestyle without limitations." (ECF No. 23 at 6.) Plaintiff replies that the court must disregard the ALJ's finding because ALJ did not rely on medical evidence in finding that plaintiff's daily activities conflict with her purported symptoms. (ECF No. 24 at 4.)

As a preliminary matter, the court will not consider the claims advanced by plaintiff and defendant regarding the medical record. The ALJ did not reference the medical record in determining that plaintiff's described activities are inconsistent with her statements about the impairments caused by her pain. Rather, the ALJ referred only to plaintiff's hearing testimony given on March 3, 2015, (AR 48–74) and plaintiff's function report, which plaintiff self-completed on May 8, 2012 (AR 252–260). This court's review is constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Although the ALJ alone is responsible for determining credibility and resolving ambiguities, she must provide a clear and convincing reason for discounting plaintiff's testimony. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). Here, the ALJ identified activities that plaintiff claims to engage in, but ignores the limitations that plaintiff notes when describing her ability to care for herself, drive, shop for groceries, and handle her finances. (AR 40.) Specifically, plaintiff's hearing testimony clarifies that it takes her four to five hours to do her and her husband's dishes because she has breathing problems and her bones ache while standing. (AR 68–69.) She needs frequent breaks to sit down and catch her breath, and the breaks typically last twenty minutes. (*Id.*) For similar reasons, plaintiff testified that she can only "make it through half of [her shower]" before needing a five-minute break to catch her breath. (AR 67.) Plaintiff also testified that when she has bone pains while taking care of her personal hygiene, her husband helps her. (AR 60.) Plaintiff's function report states that she has problems dressing and needs personal reminders to take care of personal needs and grooming.

(*Id.* at 257.) As for her ability to drive, plaintiff testifies that although she can drive "a couple blocks if [she] needs to," she does not drive often. (AR 62.) Finally, the function report states that plaintiff's husband handles most of the shopping, that plaintiff shops only two times a month, and that she listed she can handle her finances because she has "no money." (AR 255–56.) The ALJ impermissibly characterized plaintiff's testimony by failing to consider the context in which plaintiff describes her daily activities. *Garrison v. Colvin*, 759 F.3d 995, 1016 (2014) (ALJ mischaracterized plaintiff's testimony by failing to consider the limitations plaintiff describes in performing her daily tasks, which was an error of law).

The ALJ fails explain how the limited extent to which plaintiff claims to engage in her daily activities is inconsistent with testimony of her disabling symptoms. *See Orn*, 495 F.3d at 639; *Cooper v. Bowen*, 815 F.2d 557, 561 (1987) (plaintiff need not "vegetate in a dark room excluded from human and social activity" to receive benefits). Plaintiff's testimony that she can walk only short distances, that she can do dishes and care for herself so long as she takes frequent breaks, and that her husband is available to assist her, appears consistent with the cardiovascular symptoms and pain that plaintiff describes. (AR 52–71.) Moreover, plaintiff's admission that she can handle her meager finances, or shop for groceries twice a week, does not on its face demonstrate that plaintiff has the necessary capabilities to work a full-time job. (AR 255–56.) The ALJ does not offer any further explanation as to how the plaintiff's limited activities meet the threshold for transferable work skills. Because the ALJ did not consider the context of plaintiff's daily activities nor did she explain how those activities are transferable to a work environment, the court cannot conclude that the ALJ was "especially cautious in concluding that daily activities are inconsistent with testimony …." *Garrison*, 759 F.3d at 1016. Accordingly, the inconsistencies that the ALJ identified between plaintiff's daily activities and her pain testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit plaintiff's testimony regarding her disabling symptoms and limitations.

**2. Plaintiff Misrepresented Facts Relevant to the Issue of Her Disability**

The ALJ found evidence that plaintiff misrepresented facts relevant to the issue of her disability. First, plaintiff testified that she was told she is not expected to live over fifty years of

9

age, but the ALJ found no indication in plaintiff's medical records that she ever received such a prognosis. (AR 69.) The ALJ also found that plaintiff's treating cardiologist stated that plaintiff was "doing relatively well from a cardiac standpoint." (AR 40; AR 462–65.) Plaintiff contends that her testimony was not a misrepresentation of fact because she had heart catheterization surgery in March 2012 and "it is more likely than not" that a medical professional may have discussed her life expectancy with her without recording the interaction. (ECF 22 at 8; AR 463.) Defendant claims that the ALJ properly found this testimony to be a misrepresentation of fact because the record does not contain a reference to plaintiff's imminent death. (ECF No. 23 at 5.)

The court agrees with defendant. Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). It could very well be that a doctor predicted plaintiff would not live over fifty years of age because plaintiff underwent heart catheterization surgery in March 2012, (AR 463), and that the medical professional did not find it necessary to record this statement to her. *See Orn*, 495 F.3d at 634 ("The primary function of medical records is to promote communication and recordkeeping among health care personnel – not to provide evidence for disability determinations."). An alternative interpretation of the lack of evidence in the medical record is that medical professionals never told plaintiff she would only live to fifty years of age. This interpretation is supported by evidence that plaintiff "was doing relatively well from a cardiac standpoint" just three months after her surgery. (AR 462–65.) Both interpretations are rational given the absences of evidence confirming plaintiff's prognosis, so the ALJ's finding that plaintiff misrepresented her lifespan "must be upheld." *Lewis*, 498 F.3d at 911.

Second, the ALJ noted that in September 2012, plaintiff reported to an examining psychiatrist that she was on a heart transplant waitlist. (AR 40.) The ALJ found that the medical records do not indicate that plaintiff was ever placed on a heart transplant list; instead, they show that just three months before her psychiatric visit, a doctor stated she was "doing relatively well from a cardiac standpoint." (*Id.*; AR 462–65.) The ALJ made clear that plaintiff's misrepresentation suggests that plaintiff "generally may not be entirely reliable," regardless of

whether the misrepresentations were "the result of a conscious intent to mislead …." (AR 40.)

Plaintiff does not challenge she misrepresented her heart condition. Rather, she asserts that because her psychiatric visit was six months after she received heart catheterization surgery, (AR 355), she may have been under immense stress that "caused her to report things that were inconsistent." (ECF No. 22 at 9.) Plaintiff claims that under *Trevizo v. Berryhill,* 862 F.3d 987 (9th Cir. 2017), the ALJ had a duty to inspect plaintiff's inconsistent statement. Defendant counter that the ALJ properly found that the plaintiff's claim of being on a heart transplant waitlist is a misrepresentation of fact, and that plaintiff waived the issue as to this finding because she failed to challenge that her statement was unsupported by the medical record. (ECF No. 23 at 4–5; *see Gertsch v. Colvin*, 589 Fed. Appx. 381, 381 (9th Cir. 2015)).

Plaintiff's speculation as to the reason for her misrepresentation is irrelevant to the ALJ's determination that, regardless of plaintiff's intent, plaintiff misrepresented her heart condition; thus, her testimony "may not be entirely reliable." (AR 40.) Plaintiff failed to challenge the ALJ's finding on appeal, so the issue as to whether plaintiff's testimony that she was on a heart transplant waitlist is a misrepresentation of fact is waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (arguments not raised by a part in its opening brief are deemed waived). Moreover, the ALJ's finding that plaintiff misrepresented the severity of her heart condition is a clear and convincing reason to discredit her pain-related testimony supported by substantial evidence in the record. *See Garrison*, 759 F.3d at 1014 (ALJ must provide specific, clear, and convincing reasons supported by substantial evidence for finding symptom testimony not fully credible). Despite the fact that plaintiff underwent a heart catheterization surgery for heart failure in March 2012, (AR 355), the medical records make no reference to a heart transplant waitlist. In fact, the records show that in 2012, plaintiff's cardiovascular examinations indicated normal rate and rhythm and "no evidence of congestive heart failure." (AR 464–65, 520.) Plaintiff's most recent medical records show primarily "normal" results, (*see* AR 550, 569), and a chest examination noted slight abnormalities "of no clinical significance." (AR 578.) Finally, Plaintiff's citation to *Trevizo v. Berryhill,* 862 F.3d 987 (9th Cir. 2017) is inapposite because the Ninth Circuit described an ALJ's duty to inspect a plaintiff's reasons for not taking medication,

which is not at issue here.

The ALJ relied on substantial evidence in finding that plaintiff's testimony regarding her lifespan and placement on a heart transplant waitlist were misrepresentations of fact. The court finds that plaintiff's misrepresentations are clear and convincing reasons for the ALJ's decision to discount plaintiff's subjective testimony regarding her symptoms because her testimony may not be entirely accurate.

### 3. Plaintiff's Testimony Regarding the Severity of Her Symptoms Is Not Fully Supported by Objective Medical Evidence

Third, the ALJ concluded that the objective medical evidence did not support plaintiff's allegations of the severity of her symptoms. (AR 40.) The ALJ supported her determination by pointing to the following evidence in the record:

1) that plaintiff's blood pressure level is often within normal limits, (*e.g.*, AR 441; AR 470; AR 491);
2) that a doctor noted plaintiff was "doing well from a cardiac standpoint" and plaintiff denied any symptoms of heart failure, (AR 465; AR 469–11);
3) that her cardiovascular examinations were largely normal, (AR 519–21, 529);
4) that a doctor noted plaintiff was "doing a lot of walking without problems, and reported walking up to seven times a week in July 2014, (AR 519; AR 563); and,
5) that a doctor noted plaintiff had the ability to engage in an "active lifestyle without any limitations," (AR 521).

Plaintiff appears to argue that the ALJ impermissibly "summarized her version of the evidence in the file," and that the ALJ should have "explained how the medical evidence supports her assertion. (ECF No. 22 at 9) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Plaintiff also asserts that the ALJ erred by solely relying on inconsistencies with the medical record to discount plaintiff's testimony. (*Id.*) Defendant contends that the ALJ's properly found plaintiff's allegations of breathing problems were not consistent with the evidence because plaintiff's cardiovascular examinations were largely normal. (ECF No. 23 at 6.)

In *Brown-Hunter v. Colvin*, the court held that an ALJ erred in finding a plaintiff's testimony not credible solely on the basis of an RFC finding. *Id.* The ALJ did not identify "statements she found not credible and why," but merely summarized the RFC finding and discounted plaintiff's testimony to the extent that it conflicted with the RFC. *Id.* Here, the ALJ's

determination is not nearly as conclusory as the determination at issue in *Brown-Hunter*. Instead, the ALJ focused in particular on plaintiff's allegations of the severity of her heart symptoms. The ALJ referenced plaintiff's claim that she has "heart pains" frequently that will continue for the rest of her life, that she has poor memory due to reduced blood flow, that she fatigues easily and must take frequent breaks, and she can only walk about a block. (AR 39; *see* AR 50–71.) Unlike the ALJ in *Brown-Hunter*, the ALJ here properly explained how these claims of the severity of plaintiff's cardiovascular impairment were inconsistent with the medical history, and the ALJ identified numerous medical reports that show plaintiff's heart condition to be largely normal. (AR 40–41.) Indeed, a medical professional noted in 2012 that plaintiff underwent an echocardiogram and blood work, and that she "had a normal exam." (AR 521.) As recently as 2014, a medical professional noted that plaintiff had no chest pains and was "doing a lot of walking." (AR 524.) The ALJ also references the opinions of the state agency medical consultants, who found that plaintiff's overall condition was improving with conservative treatment in July 2012, and in March 2013. (AR 41; AR 114–39.) Plaintiff does not contend that those cited records were inaccurate or unrepresentative. The ALJ properly considered the lack of supporting medical evidence as a clear and convincing reason to discount plaintiff's testimony regarding the severity, persistence and limiting effects of her symptoms. *Burch v. Barnhart*, 400 F.3d 676, 681 (2005).

While a lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain [and limitations] testimony," *Id.*, the ALJ's determination is also based on the finding that plaintiff had misrepresented facts concerning her disability, as discussed above. Only one out of three reasons given by the ALJ in relation to plaintiff's credibility was not supported by substantial evidence. Thus, even if this court found that the ALJ committed error as to this factor, any error is harmless as it "does not negate the validity of the ALJ's ultimate conclusion that [plaintiff] was not credible." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Accordingly, because the ALJ's credibility finding is based upon clear and convincing reasons supported by substantial evidence, remand is not warranted. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

## IV. CONCLUSION

The ALJ did not err in her step five analysis, as her finding that plaintiff remained able to perform other work in the national economy was supported by substantial evidence in the record. Accordingly, the court recommends that plaintiff's motion for remand (ECF No. 22) be denied and that defendant's cross-motion to affirm (ECF No. 23) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand or reversal (ECF No. 22) be **DENIED** and defendant's cross-motion to affirm (ECF No. 23) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: December 6, 2017.

_____
**UNITED STATES MAGISTRATE JUDGE**